**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| DIANA RODRIGUEZ, *on behalf of herself,*<br>*FLSA Collective Plaintiffs, and the Class,*<br><br>      Plaintiff,<br><br>        v.<br><br>DR RAKESH GUPTA/DR MEENU GUPTA<br>MEDICAL P.C.,<br>RAKESH KUMAR GUPTA and<br>MEENU GUPTA<br><br>      Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

---

Plaintiff, DIANA RODRIGUEZ ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against DR RAKESH GUPTA/DR MEENU GUPTA MEDICAL P.C. ("Corporate Defendant") and RAKESH KUMAR GUPTA and MEENU GUPTA ("Individual Defendants"), and states as follows:

1

## INTRODUCTION

1.     Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving; (2) unpaid wages, including overtime, due to improper rounding; (3) unreimbursed costs for uniforms; (4) liquidated damages; and (5) attorneys' fees and costs.

2.     Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time-shaving; (2) unpaid wages, including overtime, due to improper rounding; (3) unreimbursed costs for uniforms; (4) statutory penalties; (5) liquidated damages; and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 because the events giving rise to this Complaint took place in this District.

## PARTIES

5.     Plaintiff DIANA RODRIGUEZ is a resident of Queens County, New York.

6.     Corporate Defendant DR RAKESH GUPTA/DR MEENU GUPTA MEDICAL P.C. ("Corporate Defendant") is a professional service corporation based in New York State with a principal place of business and an address for service of process at 105-55 62nd Drive #1H, Forest Hills, NY 11375.

7.      Individual Defendants own and operate one (1) business entity in New York under the name DR RAKESH GUPTA/DR MEENU GUPTA MEDICAL P.C.

8.      Individual Defendant RAKESH K GUPTA is the owner of Corporate Defendant. At all relevant times, Individual Defendant RAKESH K GUPTA exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Individual Defendant RAKESH K GUPTA has exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay for employees, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of employees. At all relevant times, employees could complain to Individual Defendant RAKESH K GUPTA regarding any of the terms of their employment, and Individual Defendant RAKESH K GUPTA possessed the authority to effect any changes to the quality or terms of their employment. Individual Defendant RAKESH K GUPTA ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendant. Individual Defendant RAKESH K GUPTA had the power and authority to supervise and control supervisors of Plaintiff and could reprimand employees.

9.      Individual Defendant MEENU GUPTA is the owner of Corporate Defendant. At all relevant times, Individual Defendant MEENU GUPTA exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. Individual Defendant MEENU GUPTA has exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay for employees, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of employees. At all relevant times, employees could complain to Individual Defendant MEENU GUPTA regarding any of the terms of their employment, and Individual Defendant MEENU GUPTA possessed the authority to effect any

changes to the quality or terms of their employment. Individual Defendant MEENU GUPTA ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendant. Individual Defendant MEENU GUPTA had the power and authority to supervise and control supervisors of Plaintiff and could reprimand employees.

10.    At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in business" within the meaning of the FLSA and NYLL and the regulations thereunder.

11.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

12.    Plaintiff brings claims for relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including, but not limited to, phlebotomists, health assistants, and nurses, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

13.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs (i) their proper wages, including overtime, due to timeshaving, (ii) their proper wages, including overtime, due to improper rounding, and (iii) costs for purchasing and maintaining a uniform.

14.    Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

15.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

16.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P."), Plaintiff brings this as a class action, on behalf of all current and former non-exempt employees (including, but not limited to, phlebotomists, health assistants, and nurses, among others) employed by Defendants in the State of New York on or after the date that is six (6) years before the filing of the Complaint in this case (the "Class Members" or "Class").

17.    The Class Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.

18.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

19.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, including overtime, due to timeshaving; (ii) failing to pay proper wages, including overtime, due to improper rounding; (iii) failing to reimburse uniform purchase and maintenance costs; (iv) failing to provide wage and hour notices to Class Members upon hiring and as legally required thereafter; and (v) failing to provide proper wage statements for each payment period.

20.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

21.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and who have previously represented plaintiffs in wage and hour cases.

22.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Members are small,

in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress their wrongs. Important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications with respect to individual Class Members, establishing incompatible standards of conduct for Defendants, resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

23.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

24.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Defendants employed Plaintiff and Class Members within the meaning of New York Labor Law and applicable state laws;

b)  What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class Members properly;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay to Plaintiff and the Class Members for their work;

d)  Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates;

e)  Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked, due to improper rounding;

f)   Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked, due to timeshaving;

g)  Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements as required under the NYLL;

h)  Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to all non-exempt employees, in their native language, per requirements of the NYLL; and

i)  Whether Defendants reimbursed Plaintiff and Class Members for their uniform maintenance costs.

## **STATEMENT OF FACTS**

***Plaintiff's Employment Background***

25.    On or around January 7, 2023, Plaintiff DIANA RODRIGUEZ was hired to work as a Phlebotomist at Defendants' DR RAKESH GUPTA/DR MEENU GUPTA MEDICAL P.C

located at 105-55 62nd Drive, #1H, Queens NY 11375. Defendants terminated Plaintiff's employment on or around August 5, 2024.

26.     From the beginning of her employment until in or around February 2024, Plaintiff was scheduled to work five (5) days a week—10:00 a.m. to 6:00 p.m. on Mondays, 10:00 a.m. to 5:00 p.m. on Tuesdays, 10 a.m. to 4:00 p.m. on Thursdays and Fridays, and 9:00 a.m. to 3:00 p.m. on Saturdays—totaling thirty-three (33) hours per week. From in or around February 2024 until her termination, Plaintiff was scheduled to work four (4) days a week—10:00 a.m. to 6:00 p.m. on Mondays, 10 a.m. to 4:00 p.m. on Thursdays and Fridays, and 9:00 a.m. to 3:00 p.m. on Saturdays—totaling twenty-six (26) hours per week.

27.     From the start of her employment until in or around January 2024, Plaintiff was compensated at an hourly rate of fifteen dollars ($15.00) per hour. From in or around January 2024 until the end of Plaintiff's employment, Plaintiff was compensated at an hourly rate of seventeen dollars ($17.00) per hour.

*Plaintiff's Timeshaving and Rounding Claims*

28.     At all relevant times, Defendants failed to pay Plaintiffs, FLSA Collective Plaintiffs, and Class Members for all hours worked according to their actual hours worked, and instead paid employees for scheduled shifts recorded on timesheets in hours that were rounded to the whole or half hour. Furthermore, Plaintiff was regularly required to remain at work well past the end of her shift but was never paid for any time after her shift's scheduled end.

29.     Throughout her employment, Plaintiff was frequently required to work past the end of her scheduled shift. Patients would often show up after their appointment times, especially towards the end of the day, but the doctors would still admit them. Plaintiff, FLSA Collective Plaintiffs, and Class Members were required to remain at work and finish taking and storing blood

for all of the late patients. Defendants only ever compensated Plaintiff for her scheduled hours, even when she left late.

30.     Plaintiff's post-shift work would regularly take 30 minutes to 1.5 hours, resulting in 2.5 to 7.5 hours per week of time shaved off of Plaintiff's compensable time per week. On some weeks, this would push Plaintiff's hours worked for that week over forty. For instance, the week from January 6, 2024 to January 12, 2024, Plaintiff worked thirty-six (36) hours on the clock. Even just assuming the average amount of time shaved, this would place Plaintiff's weekly hours at forty-one (41). Despite regularly working such weeks where her actual time worked was over forty hours, Plaintiff was never compensated the proper overtime rate of one-and-a-half times her regular rate for her hours worked past forty.

31.     FLSA Collective Plaintiffs and Class Members suffered similarly from Defendants' rounding and timeshaving policies and were also never paid their proper overtime rates for hours worked greater than forty in a given week. Evidence of Defendants' collective timeshaving and improper rounding policy can be identified from Plaintiff's paystubs, where her hours worked were always recorded to the 30-minute increment. *See* **Exhibit A**.

***Plaintiff's Unreimbursed Costs for Uniforms Claim***

32.     Throughout Plaintiff RODRIGUEZ's employment with Defendants, Plaintiff was required to wear medical scrubs every workday. However, Plaintiff was required to purchase her own medical scrubs without reimbursement from Defendants. Additionally, Defendant never reimbursed Plaintiff for her expenses incurred washing and caring for her scrubs.

33.     Medical professionals cannot simply wash their medical scrubs alongside their regular clothes because (1) medical scrubs must be washed much more frequently than regular clothes and (2) medical scrubs cannot be washed with regular cloths because doing so can cause

bacterial contamination. As a result of the heavier use and higher washing frequency, scrubs wear out more quickly than regular clothes, necessitating more frequent purchases.

34.    Because medical scrubs were required but Defendants refused to provide them or pay for their care, Plaintiff had to purchase her own scrubs and pay for washing them separately from her normal clothes, which cost her approximately fifty ($50.00) dollars per month. Similarly, FLSA Collective Plaintiffs and Class Members were required to purchase and care for medical scrubs themselves and were not reimbursed for such costs.

***Plaintiff's WTPA Claim***

35.    Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants, due to timeshaving and improper rounding. The paystubs that Defendants provided did not show the hours worked. *See* **Exhibit B**.

36.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

37.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v.*

*Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

38.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

39.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide proper wage notices and

wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

40.     Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

41.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

42.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

43.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.,* 820 N.Y.S.2d 846,

846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

44.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

45.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

46.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

47.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

48.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income.

But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

49.    Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

50.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993)

51.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did*

report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

52.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members, in violation of the NYLL.

53.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage and hour notices to Plaintiff and Class Members, in violation of the NYLL.

54.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class Members their proper wages, including overtime, due to improper rounding, in violation of the FLSA and the NYLL.

55.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class Members their proper wages, including overtime, due to timeshaving, in violation of the FLSA and the NYLL.

56.    Defendants knowingly and willfully operated their business with a policy requiring Plaintiff, FLSA Collective Plaintiffs and the Class Members to improperly cover their own uniform costs in violation of the FLSA and the NYLL.

57.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class Members.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

58.    Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

59.    At all relevant times, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

60.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

61.    At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to timeshaving.

62.    At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to improper rounding.

63.    At all relevant times, Defendants had a policy and practice of not reimbursing Plaintiff and FLSA Collective Plaintiffs for their uniform purchase and maintenance costs.

64.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

65.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, as well as uniform maintenance costs, when Defendants knew or should have known such was due.

66.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

67.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

68.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of: unpaid wages, including overtime, due to time shaving; unpaid wages, including overtime, due to improper rounding; unreimbursed costs for purchasing and maintaining uniforms; plus an equal amount as liquidated damages.

69.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

70.     Plaintiff realleges and incorporates all the above allegations of this Complaint as if fully set forth herein.

71.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

72.     At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime, in direct violation of the NYLL.

73.     At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime due to timeshaving, in direct violation of the NYLL.

74.     At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime due to improper rounding, in direct violation of the NYLL.

75.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with reimbursement for reasonable uniform purchase and maintenance costs.

76.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

77.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage statements, as required under the NYLL.

78.     Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, including overtime, due to timeshaving, unpaid wages, including overtime, due to improper rounding, unpaid uniform maintenance costs, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and the Class, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.    An award of unpaid wages, including overtime, due to timeshaving, due under the FLSA and the NYLL;

d.    An award of unpaid wages, including overtime, due to improper rounding, due under the FLSA and the NYLL;

e.    Reimbursement for the cost of maintaining and purchasing their uniform, due under the FLSA and the NYLL;

f.    An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

g.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to 29 U.S.C. § 216;

h.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

i.      An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

j.      Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k.      Designation of this action as a class action pursuant to F.R.C.P. 23;

l.      Designation of Plaintiff as Representative of the Class;

m.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: December 4, 2024

Respectfully submitted,

By:     */s/ C.K. Lee*
        C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs, and the Class*